# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DORIS RACHER, | ) | |
| SANDRA CRISPER, and | ) | |
| EARLENE ADKISSON, Co-personal | ) | |
| Representatives of the ESTATE OF | ) | |
| ERYETHA MAYBERRY, DECEASED, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-13-364-M |
| | ) | |
| WESTLAKE NURSING HOME | ) | |
| LIMITED PARTNERSHIP, d/b/a Quail | ) | |
| Creek Nursing and Rehabilitation Center; | ) | |
| WESTLAKE MANAGEMENT | ) | |
| COMPANY, a Texas Corporation; | ) | |
| RON LUSK, an Individual; | ) | |
| QC PROPERTY HOLDINGS, LLC, | ) | |
| a Georgia limited liability company; and | ) | |
| QC NURSING LLC, a Georgia limited | ) | |
| liability company, d/b/a Quail Creek | ) | |
| Nursing and Rehabilitation Center, | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER

Before the Court is defendant Ron Lusk's ("Lusk") Motion to Dismiss Plaintiffs' Original Complaint, filed June 20, 2013. On July 11, 2013, plaintiffs filed their response, and on July 18, 2013, Lusk filed his reply.

I.  Introduction

Eryetha Mayberry was a resident at the Quail Creek Nursing and Rehabilitation Center ("Nursing Home"). Plaintiffs allege that on or about April 16, 2012, two employees of the Nursing Home physically and verbally abused Ms. Mayberry. Specifically, plaintiffs allege the Nursing Home's staff shoved a rubber glove into Ms. Mayberry's mouth, slapped Ms. Mayberry in the face and head, forcefully threw Ms. Mayberry onto her bed, and struck Ms. Mayberry on the chest.

On April 15, 2013, plaintiffs filed the instant action, alleging numerous causes of action against defendants. Pursuant to Federal Rule of Civil Procedure 12(b)(6), Lusk now moves to dismiss plaintiffs' Third Cause of Action for negligence, plaintiffs' Fourth Cause of Action for violation of the Nursing Home Care Act (Okla. Stat. tit. 63, §§ 1-1901, *et seq.*), plaintiffs' Fifth Cause of Action for negligence *per se*, and plaintiffs' Sixth Cause of Action for intentional infliction of emotional distress.

II.     Standard for Dismissal

Regarding the standard for determining whether to dismiss a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), the United States Supreme Court has held:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted). Further, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not shown - that the pleader is entitled to relief." *Id.* at 679 (internal quotations and citations omitted). Additionally, "[a] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* at 678 (internal quotations and citations omitted). A court "must determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief

under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotations and citation omitted). Finally, "[a] court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

III.   Discussion

   A.   Negligence

Under Oklahoma law, to prevail on a negligence claim, a plaintiff must prove the following elements: "(1) the existence of a duty on the part of the defendant to protect plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom." *Sloan v. Owen*, 579 P.2d 812, 814 (Okla. 1977). Lusk asserts that plaintiffs have failed to state a claim for negligence because he owed no duty to Ms. Mayberry.

In their Complaint, plaintiffs allege:

> 20. At the time Ms. Mayberry was a resident at the Nursing Home, Defendant Ron Lusk was a member of the governing body of the Nursing Home responsible for establishing and implementing policies regarding the management and operation of the Nursing Home.
>
> 21. Defendant Ron Lusk, through his position as the President and owner of Defendant Westlake Management Company, had management and operational authority and control over the Nursing Home at the time Ms. Mayberry was a resident at the Nursing Home.
>
> 22. Through his management and operational authority and control over the Nursing Home, Defendant Ron Lusk could control and determine the policies, procedures, and practices at the Nursing Home, including hiring practices, training of staff, quality and competency of staff hired, salaries paid to staff, and quality of resident care.

   \*      \*      \*

3

> 41. As the President of Westlake Management Company, Defendant Ron Lusk undertook the duty of ensuring that Westlake Management Company properly conducted and carried out its management responsibility to the Nursing Home, which included the implementation of policies and procedures necessary to protect the residents in the Nursing Home from injury and neglect.

Complaint [docket no. 1] at ¶¶ 20-22, 41.

Having carefully reviewed plaintiffs' Complaint, and presuming all of plaintiffs' factual allegations are true and construing them in the light most favorable to plaintiffs, the Court finds that plaintiffs have set forth sufficient factual allegations to state a claim for negligence against Lusk. Specifically, the Court finds that based upon the above allegations, plaintiffs have sufficiently alleged that Lusk, based upon his specific responsibilities as President of Westlake Management Company and as a member of the governing body of the Nursing Home, owed a duty to Ms. Mayberry. While Lusk disputes that these were his responsibilities, at the motion to dismiss stage, the Court must presume these factual allegations are true. Accordingly, the Court finds that plaintiffs' Third Cause of Action for negligence should not be dismissed.

B. Violation of the Nursing Home Care Act

In their Complaint, plaintiffs allege that Lusk violated Oklahoma's Nursing Home Care Act by failing to provide adequate and proper medical care and accommodations to Ms. Mayberry. *See* Complaint at ¶ 47. Lusk asserts that because he is not an "owner" under the Nursing Home Care Act, he can not be liable for the actions of the Nursing Home's employees who abused Ms. Mayberry under the Nursing Home Care Act. However, having carefully reviewed plaintiffs' Complaint, the Court finds that plaintiffs are not seeking to hold Lusk liable for the Nursing Home's employees' alleged violations of the Act but are seeking to hold Lusk liable for his own actions or inactions, the same actions and/or inactions which are the basis for plaintiffs' negligence claim

4

against Lusk, which plaintiffs contend violate the Nursing Home Care Act. Further, the Court finds that plaintiffs have set forth sufficient factual allegations to state a claim based upon Lusk's violation of the Nursing Home Care Act.

Accordingly, the Court finds that plaintiffs' Fourth Cause of Action for violation of the Nursing Home Care Act should not be dismissed.

### C. Negligence *per se*

Lusk asserts that plaintiffs' negligence *per se* claim should be dismissed because he has not violated the Nursing Home Care Act. As set forth above, the Court has found that plaintiffs have set forth sufficient factual allegations to state a claim that Lusk violated the Nursing Home Care Act. Based upon that finding, the Court finds that plaintiffs have set forth sufficient factual allegations to state a claim for negligence *per se*. Accordingly, the Court finds that plaintiffs' Fifth Cause of Action for negligence *per se* should not be dismissed.

### D. Intentional infliction of emotional distress

Plaintiffs assert that under the Nursing Home Care Act, the owner and licensee of the nursing home are liable for the intentional acts of their agents and employees that injure a resident. Plaintiffs contend that Lusk is the owner of the Nursing Home and is, thus, liable for the injuries and damages caused by the intentional infliction of emotional distress upon Ms. Mayberry by the Nursing Home's employees.

Section 1-1939 of the Nursing Home Care Act provides, in pertinent part: "the owner and licensee are liable to a resident for any intentional or negligent act or omission of their agents or employees which injures the resident." Okla. Stat. tit. 63, § 1-1939(A). The Nursing Home Care Act defines "owner" as follows: "a person, corporation, partnership, association, or other entity

which owns a facility or leases a facility. The person or entity that stands to profit or lose as a result of the financial success or failure of the operation shall be presumed to be the owner of the facility." Okla. Stat. tit. 63, § 1-1902(16).

The Oklahoma Supreme Court interpreted the definition of "owner" set forth in the Nursing Home Care Act in *Fanning v. Brown*, 85 P.3d 841 (Okla. 2004). In *Fanning*, the Oklahoma Supreme Court found as follows:

> Accordingly, as the definition of "owner" is defined by reference to "facility", the "owner" of a "facility" is a person or entity that has responsibility for providing the relevant services to residents.
> In our view, the "profit or lose" language in the second sentence does not extend liability beyond the specific person or entity which has responsibility for providing the relevant services. We believe the Legislature intended the language to be construed narrowly so that it would not extend liability to other persons and entities which have some sort of legal interest in the facility but are not the "owner". These other persons or entities, like shareholders of a corporation, remain entitled to the protections otherwise available to the particular business form they have chosen.
> A boad interpretation of the "profit or lose" language in the definition of "owner" would allow the joinder of defendants clearly never intended by the Legislature. We can imagine a variety of persons or entities that would "stand to profit or lose as a result of the financial success or failure of the operation." For instance, landlords, vendors, and even employees of the facility themselves, all could be said to have economic interests in the financial success of the nursing facility. It can not be seriously argued that anyone with an economic interest in the success or failure of the facility should be a defendant in [a lawsuit].
> . . . Although the defendant shareholders can be said to have profited incidentally from the facility's operations, they are not "owners" under the NHCA.

*Fanning*, 85 P.3d at 846.

Plaintiffs assert that Lusk falls within the definition of "owner." Specifically, plaintiffs allege that Lusk is the limited partner of defendant Westlake Nursing Home Limited Partnership,

6

owning approximately 90% as a limited partner. Plaintiffs further allege that defendant Westlake Management Company is the general partner of defendant Westlake Nursing Home Limited Partnership, owning approximately 10% as general partner. Additionally, plaintiffs allege that defendant Westlake Management Company is owned 100% by Lusk. Based upon Lusk's ownership interests in defendants Westlake Nursing Home Limited Partnership and Westlake Management Company, plaintiffs assert that Lusk is an "owner" of the Nursing Home under the Nursing Home Care Act and can be held liable for the intentional infliction of emotional distress upon Ms. Mayberry by the Nursing Home's employees.

Having carefully reviewed the parties' submissions, and applying the interpretation of the definition of "owner" set forth in *Fanning*, the Court finds that Lusk does not fall within the definition of "owner" in the Nursing Home Care Act. A finding that Lusk was an "owner" would be too broad of an interpretation and would be contrary to the intention of the Legislature. Accordingly, the Court finds that Lusk can not be held liable for the alleged intentional infliction of emotional distress and that plaintiffs' Sixth Cause of Action for intentional infliction of emotional distress should be dismissed as to Lusk.

IV. Conclusion

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Lusk's Motion to Dismiss Plaintiffs' Original Complaint [docket no. 24] as follows:

> (A) The Court GRANTS the motion to dismiss as to plaintiffs' Sixth Cause of Action for intentional infliction of emotional distress and DISMISSES this cause of action only as to Lusk, and

(B) The Court DENIES the motion to dismiss as to plaintiffs' Third Cause of Action for negligence, plaintiffs' Fourth Cause of Action for violation of the Nursing Home Care Act, and plaintiffs' Fifth Cause of Action for negligence *per se*.

**IT IS SO ORDERED this 2nd day of August, 2013.**

VICKI MILES-LaGRANGE
CHIEF UNITED STATES DISTRICT JUDGE